***********
The undersigned have reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Hall and the briefs and arguments of the parties. The appealing party has not show good ground to reconsider the evidence, receive further evidence, rehear the parties or their representatives, or amend the Opinion and Award except for minor modifications
 *********** EVIDENTIARY RULING
Defendants made a motion at oral argument to submit additional evidence in the form of Exhibits 1-3. Plaintiff made no objection and therefore defendants Exhibits 1-3 are admitted into evidence and hereby made a part of the record.
 ***********
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties as:
 STIPULATIONS
1. Plaintiff contends that an employer/employee relationship existed at the time of the alleged incident. Defendant contends that plaintiff was working for the employer on the date of his injury.
2. It is stipulated that Sam Wood Associates was a duly qualified employer at the time of the alleged incident and was insured by The Goff Group.
3. It is stipulated that the North Carolina Industrial Commission has jurisdiction to determine whether an employer/employee relationship existed, and, if so, that the parties are subject to the North Carolina Workers' Compensation Act, the employer employing the requisite number of employees to be bound under the provisions of said Act at the time of the alleged incident.
4. It is stipulated that plaintiff's average weekly wage is $484.02.
5. It is stipulated that the alleged date of injury is June 16, 1998.
6. It is stipulated that the employee testified to the benefits, if any, he has received at the hearing before the deputy commissioner.
7. It is stipulated that plaintiff has been treated by Carolina Pain Consultants, Dr. Pam Whitney, Dr. William Lestini, Triangle Spine and Back Center, Goldsboro Physical Therapy and Rehabilitation, Inc., Dr. George C. Venters, Raleigh Bone and Joint Clinic, Rex Healthcare, Dr. Rich, Capital Neurosurgery, Dr. B. L. Kihlstrom, Southwind Rehabilitation Center, Concentra Medical Care, Dr. Verne Schmickley, Raleigh Hospital, Dr. James Fulghum, Carolina Back Institute, Deborah Lord, PT, Goldsboro Orthopaedic Associates, Wake Medical Center Radiology Department, Dr. David Tomaszek, Dr. Tejpal S. Dhillon, Smithfield Orthopaedic, Wayne Memorial Hospital (Dr. Nigel J. Strickland, Dr. Tomaszek), and Lisa Bookert of Clayton Family Medicine. Parties further stipulate to all health care provider medical records, which include, but not limited to, the preceding listed providers.
8. The depositions of Charles Nicholson, M.D., James Fulghum, M.D., Lisa Bookert, M.D. and George Venters, M.D. were taken and submitted into evidence after the hearing before the deputy commissioner. The deposition transcripts are a part of the record in this case.
9. The parties agree that the issues to be answered are: Whether the claim is subject to denial under N.C. Gen. Stat. § 97-12;
What benefits plaintiff is entitled to receive, including temporary benefits and medical treatment;
Whether the plaintiff is permanently and totally disabled;
Whether an employee-employer relationship existed between plaintiff and defendants by virtue of plaintiff's alleged misrepresentation as provided in Johnson v. High Point;
Whether plaintiff suffered an injury by accident or contracted an occupational disease and related disability to his low back on June 16, 1998, and if so, whether any disability resulted;
Whether defendants properly terminated plaintiff for violation of defendants' drug policy or whether plaintiff constructively refused employment.
 ***********
Based upon all the competent evidence of record, the Full Commission finds as fact and concludes as a matter of law the following:
 FINDINGS OF FACT
1. At the time of the hearing before the deputy commissioner, plaintiff was 42 years old and had a seventh grade education. Plaintiff began working for defendant-employer in January 1998 as a ceiling mechanic.
2. On his employment application, plaintiff indicated that he took "Dawn's (sic) pills at night at times" and that he had "Back surgery in 1990." On the application was a question, "Do you have any illnesses that would prevent you from your responsibilities?" Plaintiff checked "no". Plaintiff answered the questions on defendant's employment application. There is no evidence that plaintiff concealed or made fraudulent misrepresentations on his application.
3. Plaintiff worked full-time for defendant for approximately six months without being disciplined by defendant or having problems doing his job. Plaintiff testified that he sometimes got tired doing his job, but that he had no problems with pain due to his job prior to June 16, 1998. On June 16, 1998, plaintiff injured his back during the course and scope of his employment when he lifted a carton of ceiling tiles off of the floor and placed them on his scaffold, which was approximately five feet off the floor.
4. According to Michael Barnes, who was a field superintendent for defendant at the time of plaintiff's injury, the jobsite on which plaintiff was working at the time of the injury called for the installation of Armstrong Cortega ceiling tiles, Armstrong item number 816, which were the only tiles being installed on that jobsite. Defendant's Exhibit Number 3 indicates these tiles came in cartons containing 48 square feet of tile with a weight of one pound per square foot.
5. Dr. Venters testified that weight restrictions are just a guideline and that "anybody that just hangs their hat on actually (sic) certain number of pounds is, I think, missing the point. It's the idea of not extremely heavy lifting." He went on to say that it is "very subjective whether one can lift 100 pounds once a day or 25 pounds 50 times a day." Plaintiff's job did not require repetitive lifting of the 48-pound boxes of tiles. Rather, plaintiff's job required occasional lifting of cartons of tiles to place them on the scaffolding and then frequent lifting of the individual 4-pound tiles to place them in the ceiling grid.
6. Plaintiff went to the company's doctor, Dr. Lisa Bookert, on June 17, 1998 for treatment. A routine drug test revealed some level of cannabis in his system, but there has been no showing that the level was high enough to affect his judgment, balance, or to cause any intoxication. Plaintiff testified that the last time he had smoked marijuana was four days prior to the injury at work. Plaintiff's wife testified that plaintiff was able to walk and drive and was not slurring his speech prior to going to work on the day of the injury. Plaintiff's supervisor, Mr. Barnes, did not see plaintiff on the jobsite and testified he spent approximately 99 percent of his time in his office.
7. Plaintiff specifically saw Dr. Bookert for back pain, leg pain, and right leg numbness that resulted from an injury at work the day before. She diagnosed him with lumbar spasm, gave him a Medrol dose pack, Duract, Flexeril, took him out of work, and asked him to return in about a week.
8. Plaintiff returned to Dr. Bookert on June 22, 1998. Since her physical examination revealed a positive straight leg raise with continued back pain, she referred him to an orthopaedic surgeon, Dr. Lambertson. Dr. Bookert, the company doctor, stated, and the Full Commission finds, that plaintiff's injury of June 16, 1998 was an aggravating cause of plaintiff's back pain for which he was treated.
9. Dr. Venters and Dr. Nicholson opined that they could not say whether plaintiff's pain was the result of degenerative changes or whether the injury of June 16, 1998 activated or aggravated plaintiff's back condition resulting in the back pain. Dr. Whitney's records state, "the recent lifting in June may have temporarily aggravated things, but again no ruptured disc or anything."
10. In accordance with Dr. Bookert's recommendation, plaintiff saw Dr. Lambertson for his orthopaedic consult. Dr. Lambertson saw him one time and referred him to Dr. Pedraza because his office was closer to plaintiff's home. Dr. Pedraza's partner, Dr. Rockwell, actually saw plaintiff and referred him back to Dr. Venters, who had done plaintiff's back surgery some ten years prior.
11. Dr. Venters examined plaintiff and kept him out of work so that his medications and physical therapy/work hardening program might have an opportunity to lessen plaintiff's pain.
12. Plaintiff then went on a protracted medical course, finally receiving treatment from Dr. Kittelberger and Dr. Nicholson in the form of epidural steroid injections. Plaintiff was initially seen by their practice, Critical Health Systems of North Carolina, on October 11, 1998.
13. A spinal cord stimulator was implanted February 2, 1999 to try to control pain. When this was not successful, Dr. Kittelberger and Dr. Nicholson referred plaintiff to Dr. Lestini for a surgical consult.
14. Dr. Lestini did not recommend further surgical intervention and referred his pain management back to Drs. Kittelberger and Nicholson. They changed plaintiff's medications and started a series of lumbar facet blocks. The first was in July 1999 with subsequent blocks in November 1999, March 2000, July 2000, October 2000, January 2001, and April 2002. Dr. Nicholson continues to try methods to manage plaintiff's pain.
15. On February 9, 2001, plaintiff saw Dr. Fulghum for an independent medical examination. Dr. Fulghum found no indication that surgical intervention was required and stated that plaintiff should be able to perform some type of sedentary work.
16. Plaintiff continues to have pain and has not returned to work. There is no evidence that plaintiff has sought work with defendants since his injury or that defendants have suitable work available for plaintiff.
17. Although defendants initially paid workers' compensation benefits to plaintiff, plaintiff has not received any benefits since November 1998.
18. Defendant's Exhibit Number 1 shows that plaintiff agreed to "adhere to all rules, regulations, and requirements as referenced in the Safety Manual regarding my participation in Drug Testing." However, the only evidence of defendants drug policy before the Full Commission is Michael Barnes' testimony that plaintiff would be laid off for six weeks and would have to take another drug test in order to return to work. Mr. Barnes went on to say that it was not defendants' policy to contact employees after a positive drug test, but, rather, that it was up to the employee to call defendants. No other evidence was offered regarding the drug policy of defendant-employer and whether or not plaintiff was terminated for violation of that policy.
19. The Full Commission finds plaintiff's testimony in this matter to be credible.
 ***********
Based upon the foregoing stipulations and findings of fact, the Full Commission makes the following:
 CONCLUSIONS OF LAW
1. Plaintiff never made a material misrepresentation of fact regarding his past medical history on his employment application with defendant-employer. Thus, an employer/employee relationship was established in January 1998. N.C. Gen. Stat. § 97-2(1).
2. Plaintiff sustained a compensable injury by accident, which arose out of and in the course of his employment with defendants on June 16, 1998. N.C. Gen. Stat. § 97-2(6).
3. Although a routine drug test taken the day after his compensable injury was positive for cannabis, there is no evidence establishing a causal link between plaintiff's positive blood test and his work related injury. The intoxication must proximately cause the injury to bar the claim under the Workers' Compensation Act. Plaintiff's injury was not proximately caused by intoxication from cannabis. N.C. Gen. Stat. §97-2(12).
4. Plaintiff has met his burden of proving he sustained a new injury on the job with defendant-employer on June 16, 1998. A work-related injury need not be the sole causative force to render an injury compensable.Kendrick v. City of Greensboro, 80 N.C. App. 183, 341 S.E.2d 122, disc.review denied, 317 N.C. 335, 346 S.E.2d 500 (1986). "When a pre-existing, nondisabling, non-job-related condition is aggravated or accelerated by an accidental injury arising out of and in the course of employment so that disability results, then the employer must compensate the employee for the entire resulting disability " Morrison v. BurlingtonIndustries, 304 N.C. 1, 18, 282 S.E.2d 458, 470 (1981).
5. As a result of his compensable injury, plaintiff is temporarily totally disabled and entitled to temporary total disability compensation for the period of June 16, 1998 to the present and continuing until plaintiff returns to work or further order of the Industrial Commission. N.C. Gen. Stat. § 97-29.
7. Plaintiff is entitled to have defendant-carrier pay for all medical expenses incurred or to be incurred as a result of the compensable injury as may be required to provide relief, effect a cure or lessen the period of disability. N.C. Gen. Stat. § 97-25.
8. Plaintiff is not permanently and totally disabled at this time. Only when a workers' compensation claimant has reached "maximum medical improvement" does the question of entitlement to permanent disability even arise. N.C. Gen. Stat. § 97-31.
9. Defendants appealed the deputy commissioner's Opinion and Award, and the Full Commission affirmed said opinion with compensation being paid to the plaintiff. In the discretion of the Full Commission, counsel for plaintiff is entitled to have defendants pay an attorney's fee in the amount of $750.00 which is in addition to the amount awarded as a percentage of the plaintiff's compensation. N.C. Gen. Stat. § 97-88.
 ***********
Based upon the foregoing stipulations, findings of fact, and conclusions of law, the Full Commission enters the following:
 AWARD
1. Defendants shall pay plaintiff temporary total disability benefits from June 16, 1998 through the present, and continuing until further Order of the Commission. To the extent that amount has accrued, defendants shall pay that amount to plaintiff in a lump sum and, thereafter, defendants shall pay plaintiff weekly, subject to a credit for any temporary total disability benefits that defendants have already paid plaintiff and subject to a reasonable attorney's fee set out below.
2. Defendants shall pay for all medical expenses incurred or to be incurred as a result of plaintiff's compensable injury as may be required to provide relief, effect a cure or lessen the period of disability.
3. A reasonable attorney's fee of 25% of the compensation awarded to plaintiff in paragraph 1 above is hereby approved to be deducted from the lump sum due plaintiff and shall be paid directly to plaintiff's counsel. Thereafter, every fourth check shall be paid directly to plaintiff's counsel.
4. Defendants shall pay to counsel for the plaintiff an attorney's fee in the amount of $750.00 for defending this matter on appeal to the Full Commission. This fee is to be paid in addition to the fees awarded as a percentage of the plaintiff's compensation.
5. Defendants shall pay the costs.
This the 8th day of September 2003.
 S/_______________ DIANNE C. SELLERS COMMISSIONER
CONCURRING:
 S/____________ BUCK LATTIMORE CHAIRMAN
 S/_______________ CHRISTOPHER SCOTT COMMISSIONER